UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HORIZON AIR INDUSTRIES, INC.<br><br>                    Petitioner,<br><br>    v.<br><br>AIRLINE PROFESSIONALS ASSOC.,<br>TEAMSTERS LOCAL 1224,<br><br>                    Respondent. | NO. 2:13-cv-681 RSM<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Cross Motions for Summary Judgment by Respondent-Counterclaimant Airline Professional Association, Teamsters Local 1224 (the "Union") and Petitioner Horizon Air Industries, Inc. ("Horizon"). Dkt. ## 16, 17. Horizon moves the Court to vacate, and the Union moves the Court to uphold, an arbitration award that allows for the reinstatement of First Officer Brian Milam following a positive drug test. Neither party has requested oral argument, and the Court finds it unnecessary. Having reviewed the briefs of both parties and the remainder of the record and for the reasons stated herein, the Court denies both motions in part and remands the case to the System Board of Adjustment for further proceedings.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

**Factual and Procedural Background**

The facts of this case as determined by Horizon Air Pilot's System Board of Adjustment (the "Board) are binding in this Court's review of the underlying arbitration award and have been stipulated to by the parties. Horizon is a regional passenger carrier, with its corporate headquarters in Seatac, Washington, operating daily flights throughout the Western United States. As a "common carrier by air" within the meaning of the Railway Labor Act, 45 U.S.C. §§ 151, 181, Horizon is regulated by the Federal Aviation Administration ("FAA") and the Department of Transportation ("DOT"). Dkt. # 1, ¶ 1. The Union represents pilots of Horizon, including First Officer Brian Milam ("Milam"). Horizon and the Union are parties to a Collective Bargaining Agreement ("CBA"), which provides a process for employees like Milam, represented by the Union, to submit grievances for arbitration by a three-member Board. *See* Dkt. # 18, Ex. 6.

Both the FAA and the DOT require that employees operating in a safety-sensitive position, including Horizon's pilots, be tested for drugs and alcohol. Dkt. # 1, Ex. 2, p. 2 (hereinafter, "Award"). Horizon complies with these drug-testing requirements through its Integrated Drug and Alcohol Program ("IDAP"), which is incorporated into the CBA. The IDAP states, *inter alia*, that:

> the use, sale, transfer, possession, or presence in one's system of any controlled substance (except medically prescribed drugs) by any safety sensitive employee while on company premises, engaged in company business, operating company equipment, or while under the authority of Horizon Air is strictly prohibited. Disciplinary action will be taken as necessary up to and including termination.

*Id.;* Dkt. # 18, Ex. 4, p. 4 (hereinafter, "IDAP"). The IDAP further provides that after an employee has had a positive drug test result, that employee will be offered a last chance agreement ("LCA") if such an agreement is "consistent with SAP recommendations and a review of company records supports retention of the employee as being in the best interest of Horizon Air. If the SAP does not recommend retention and/or company records do not support retention, the employee will be terminated." IDAP at pp. 14-15 (emphasis in original).

First Officer Milam was hired by Horizon in January 2004, where he worked through his termination in November 2011. On November 4, 2011, Milam was scheduled to fly a roundtrip from Seattle, Washington to Redmond, Oregon, followed by a roundtrip from

Seattle, Washington to Spokane, Washington. Award at p. 3. Upon completing his first roundtrip, Milam was notified that he was to be subject to a random drug test, to which he submitted. After providing his specimen, Milam completed the Seattle to Spokane roundtrip. Milam was present in the cockpit during all four flight legs, though the pilot did the flying. Upon returning to Seattle, Milam called in sick for the remaining days of his schedule through November 7th, and then again through November 13th, and additionally scheduled an appointment with a mental health provider. *Id.* at pp. 3-4. Milam subsequently acknowledged that he had been using marijuana periodically during the preceding six months in order to "cope" with various issues, including chronic back pain, chronic sinusitis, and difficulties associated with his wife's thyroid disorder, high-risk pregnancies, and post-partum depression. *Id.* at p. 3. Milam testified that he never used the drug while on duty but would use marijuana the night before serving on an afternoon flight. Milam testified to using marijuana around 7 p.m. on November 3, 2011 and acknowledges calling in sick "*because* of the drug test." *Id.* at p. 4 (emphasis in original).

On November 14, 2011, a confirmation test on Milam's specimen confirmed that he had tested positive for marijuana. *Id.* Horizon provided to Milam a letter on November 17, 2011, advising him that, as a result of his positive drug test, he was in violation of Federal regulations and would be unable to perform any DOT/FAA safety sensitive duties for any employer until he completed a Substance Abuse Professional (SAP) evaluation. The letter included a list of three SAPs. *Id.*

On November 21, 2011, Horizon summoned Milam to a meeting, at which he was offered the opportunity to test a split sample of the specimen to confirm the original drug test finding. After Milam declined, he was handed a letter, signed by Seattle Assistant Chief Pilot Gordon Smith, terminating Milam's employment. *Id.* Prior to Milam's termination, Mr. Smith had reviewed two of Milam's "action log entries," or electronic files stored on a system known as "POSSUM" that document an aspect of an employee's performance. *Id.* at p. 5. Both entries pertained to "excessive sick leave" taken by Milam during the 12 months preceding each entry. *Id.* No disciplinary action was taken with respect to the first entry, and no meeting had taken place with respect to the second at the point that Milam was terminated for his positive drug test. The Board found that Mr. Smith had not reviewed any additional

information prior to terminating Milam, and had therefore not reviewed Milam's personnel file, training file, or letters of recommendation written by Mr. Smith himself on Milam's behalf. *Id.* at p. 6.

After his termination, Milam contacted David Perlman, one of the Substance Abuse Professionals listed in Milam's termination letter. Upon meeting with Milam on November 29, 2014, Mr. Perlman diagnosed him as suffering from cannabis abuse and referred him to treatment, including a one-time marijuana awareness class and a three to six month course of individual counseling. Subsequent to Milam's satisfactory completion of the treatment plan, Mr. Perlman conducted a follow-up evaluation and issued a "Follow-up Evaluation/Notice of Compliance" report to Horizon. In his report, Mr. Perlman stated that Milam was "rated at a low risk of continued use, does not present an imminent risk or liability at the workplace and may return to work at this time, subject to MRO review and FAA suspension requirements." *Id.* at p. 7.

Following Milam's termination, the Union submitted a grievance on his behalf. *Id.* at p. 2. The grievance was heard by the Board on September 11, 2012, pursuant to the CBA and the Railway Labor Act, 45 U.S.C. § 151-188 ("RLA"), consisting of one neutral arbitrator, one union board member, and one Horizon board member. The parties stipulated to the following issue to be determined by the Board: "Was there cause for Horizon Air to discharge the Grievant on November 21, 2011, and if not, what shall be the remedy?" *Id.* at p. 2.

After conducting a hearing, through which both parties had an opportunity to submit documentary evidence and to examine and cross-examine witnesses, the Board issued its Opinion and Order (hereinafter, "Award") resolving the grievance on February 11, 2013, from which the Horizon representative dissented. The Board majority found that, regardless of whether he was actually impaired at any time during the flights on November 4, 2011, Milam's positive drug test alone constituted a violation of the IDAP and a basis for termination. *Id.* at p. 9.  Nonetheless, the Board determined that Horizon had failed to comply with the IDAP insofar as it also required Horizon to determine Milam's eligibility for a last chance agreement prior to terminating him. In reviewing Milam's eligibility, the Board found first that a return to employment had been consistent with the recommendation of the SAP, Mr. Perlman. *Id.* at p. 10. It subsequently found that the Board had violated the terms of the

IDAP by terminating Milam upon selectively reviewing only his two POSSUM entries rather than reviewing all of his relevant company records. *Id.* at p. 11. Accordingly, the Board concluded that Horizon was without cause to terminate Milam's employment because of its failure to comply with the IDAP.  As to the appropriate remedy, the Board ordered Horizon to reinstate Milam with an LCA and full benefits and seniority, but without back pay. *Id.* at p. 15. The Board further subjected Milam's reinstatement to his satisfaction of particular conditions precedent, including his obtainment of a current medical certification on file with the FAA and further necessary certifications, and his provision to Horizon of an updated Follow-up Evaluation and Notice of Compliance from a SAP.

Horizon's petition to this Court followed. Dkt. # 1. As the parties have not yet reached agreement on an appropriate last chance agreement, Milam remains suspended from duty. *See* Dkt. # 29.

## Motions to Strike

As an initial matter, the Court considers motions to strike presented by both parties. The Union moves the Court to strike "any and all facts in the pleadings of the Company inconsistent with and/or in addition to the findings of the Board." Dkt. # 25, p. 3. The Court agrees with the Union that its review must, and is herein, confined to the findings of the fact of the Board. "A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding." *Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281, 1289 (9th Cir. 1986). However, as Respondent has not specified the facts and exhibits to which its motion to strike pertains, the Court declines to grant it.

Horizon moves the Court to strike arguments presented by the Union for the first time through its Reply brief (Dkt. # 25, pp. 11-13), pertaining to attorneys' fees and costs. Dkt. # 28. As a general rule, a "movant may not raise new facts or arguments in his reply brief." *Quinstreet, Inc v. Ferguson*, 2008 WL 5102378, at *4 (W.D. Wash. 2008). *See also Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) ("It is well established in this circuit that [t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (citations and internal quotations omitted). The Court agrees with Horizon that a litigant may not raise issues for the first time upon reply, as doing so deprives the opposing

party of an opportunity to respond. The Court accordingly grants Petitioner's motion to strike and disregards the Union's arguments for attorneys' fees presented through its reply brief.

### Standard of Review

A grant of summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted). Where the court reviews an arbitration award, it is confined to the evidence submitted to, and the factual findings of, the arbitration board. *See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987). The Court may not reject an arbitrator's factual findings simply because it disagrees with them. *Id.*

It is well-settled that judicial review of system board of adjustment awards is "among the narrowest known to the law." *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 842 (9th Cir. 1989); *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 91-92 (1978). Congress enacted the RLA in order to promote stability in the railroad industry and provide for the efficient resolution of labor-management disputes that arise out of railroad collective bargaining agreements. *Lewy*, 799 F.2d at 1289. The RLA thus reflects Congress' intent to settle labor disputes via grievance procedures and arbitration, and to insulate arbitral decisions from judicial review. *Misco*, 484 U.S. at 36-37; 45 U.S.C. § 153, First (m) (providing that the decisions of a system board of adjustment are "final and binding upon both parties to the dispute."). The authority of the court to review an award under the RLA is statutorily limited to three specified grounds: (1) failure of the Adjustment Board to comply with the RLA; (2) failure of the Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. *Edelman*, 892 F.2d at 842, quoting *Sheehan*, 439 U.S. at 92-93; 45 U.S.C. § 153, First (q). Pursuant to 45 U.S.C. § 184, this limited standard of judicial review of arbitration awards, developed for the context of the railroad industry, applies equally to the airline industry. *See Singer v. Flying Tiger Line. Inc.*, 652 F.2d 1349,

1355 (9th Cir. 1981).

## Analysis

On motion for summary judgment, Horizon contends that the Award should be subjected to judicial review, and should be vacated, on two grounds. First, Horizon contends that the Award should be set aside because it is contrary to public policy, which Horizon asserts is a statutorily independent basis for judicial review of an arbitration award. Second, Horizon contends that the Award should be vacated because the Board exceeded the scope of its jurisdiction in requiring the reinstatement of Milam with a last chance agreement. The Court addresses each of these arguments in turn.

### 1) **Public Policy Review**

As an initial matter, the parties dispute whether an arbitration award may be set aside if it is determined to violate public policy. In the context of the National Labor Relations Act ("NLRA"), the Ninth Circuit has recognized that it "is the now-settled rule that a court need not, in fact cannot, enforce an award which violates public policy." *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 889 F.2s 1200, 1210 (9th Cir. 1989). The rationale underlying public policy review of an arbitrator's award under a collective bargaining agreement stems from the "general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco*, 484 U.S. at 42; *see also, Stead*, 88 F.2d at 1209 n. 9 (characterizing the public policy review "exception" as "nothing more than a specific application of the general rule that a court cannot enforce any contract that contravenes public policy"). Stated differently, the public policy doctrine recognizes that "courts should not lend their authority to agreements that harm the public." *Union Pacific R. Co. v. United Transp. Union*, 3 F.3d 255, 260 (8th Cir. 1993).

The Union contends that public policy review is not available under the RLA, which, unlike the NLRA, explicitly constrained judicial review to three enumerated grounds. *See Sheehan*, 439 U.S. at 93 ("Judicial review of Adjustment Board orders is limited to three specific grounds… ."). While the Ninth Circuit has found that due process challenges raise an independent jurisdictional basis under the RLA, *see Edelman*, 892 F.2d at 846, it has not yet

determined whether a public policy challenge provides an additional ground beyond those enumerated in 45 U.S.C. § 153. *See United Transp. Union v. Union Pacific R. Co.*, 116 F.3d 430, 433 (9th Cir. 1997); *c.f.*, *Union Pacific R. Co.*, 3 F.3d at 260 (holding that "a court may refuse to enforce the parties' agreement where a public policy would be violated by enforcing the agreement, whether expressed in the form of a private contract or an arbitration award under either the [NLRA] or the [RLA]"). While the Court agrees with Horizon that reason and precedent support judicial authority to vacate an arbitration award that violates public policy, it need not reach the question in this case, as Horizon has failed to show that Milam's reinstatement, subject to the conditions precedent provided by the Award, would violate an explicit, well-defined, and dominant public policy.

Where judicial review of arbitration awards under the public policy exception is established, "the scope of such review is 'extremely limited.'" *United Transp. Union*, 116 F.3d at 433, citing *American Postal Workers Union v. United States Postal Service*, 789 F.2d 1, 8, (D.C. Cir. 1986). To vacate an award on public policy grounds, the court must first locate a public policy that is "explicit," "well defined," and "dominant," and that is "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 62 (2000) (internal citations and quotations omitted). Second, the court must determine whether the arbitration award itself, rather than underlying acts or conduct of the employee, violates the identified public policy. *Id.* ("[T]he question to be answered is not whether [the employee's] drug use itself violates public policy, but whether the agreement to reinstate him does so."); *see also*, *Stead Motors*, 886 F.2d at 1212 ("If a court relies on public policy to vacate an arbitral award reinstating an employee, it must be a policy that bars *reinstatement*.") (emphasis in original).

Horizon provides ample support for a "clear and dominant public policy against the operation of any aircraft while under the influence of prohibited Schedule I drugs, such as marijuana." Dkt. # 17, p. 14. Horizon cites to a complex of regulations enacted pursuant to the Omnibus Transportation Employee Testing Act of 1991, through which Congress and the FAA require that airlines test employees operating in safety-sensitive positions for the presence of controlled substances in their systems and which authorize penalties, up to and

including termination. Dkt. # 17, p. 14. *See, e.g.*, 49 U.S.C. § 45102(a) (directing the FAA to promulgate regulations providing for the screening of airline employees for the use of a control substance); 49 U.S.C. § 45102(c) (authorizing "suspension or revocation of any certificate…or the disqualification or dismissal of the individual" who has tested positive for presence of a controlled substance); 14 C.F.R. § 120.33 (barring any individual from performing a safety-sensitive function for an FAA-regulated airline while "that individual has a prohibited drug… in his or her system").

However, what is at issue is not whether Milam's use of marijuana contravenes public policy, but whether the Board's Award does so. *Eastern Associated Coal Corp.*, 531 U.S. 57, is instructive on this distinction. In *Eastern Associated Coal Corp.*, an employer sought the revocation of an arbitration award reinstating an employee truck driver who had twice tested positive for marijuana, subject to return-to-duty conditions. While the Court recognized the strong public policies against drug use by transportation workers and in favor of public testing, it upheld the award as no specific provision barred reinstatement. *See id.* at 67 ("We hesitate to infer a public policy in this area that goes beyond the careful and detailed scheme Congress and the Secretary have created."). In doing so, the Court noted the "remedial aims" of the Omnibus Transportation Employee Testing Act, which provides that "rehabilitation is a critical component of any testing program," and that "rehabilitation should be made available to individuals, as appropriate." *Id.* at 64 (internal citations omitted). As in *Eastern*, the instant Award punishes Milam for the severe risks that he has posed to public safety by denying him backpay and subjecting him to further treatment and testing prior to reinstatement, consistent with the rehabilitative aims of the Omnibus Testing Act and the IDAP. And, as in *Eastern*, the Court declines to find that, absent a specific and clear statutory provision, the Testing Act categorically bars a rehabilitated Milam from returning to duty.

In search of a specific positive law barring reinstatement, Horizon cites to 14 C.F.R. § 120.111(e)(2), which provides that "[a]n employee who has engaged in prohibited drug use during the performance of a safety-sensitive function…is permanently precluded from performing that safety-sensitive function for an employer." Horizon contends that Milam's positive drug test is sufficient to establish that he "engaged in prohibited drug use" within the meaning of this provision and that he should thus be permanently barred from employment.

The Court disagrees. The Board's order reinstating Milam contained no findings of fact pertaining to Milam's use of marijuana during a safety-sensitive function and explicitly avoided considerations as to whether "Milam was impaired" during the flights in question, as the Court determined that the single positive drug test alone could provide a basis for termination. *See* Award at p. 9. The Court is not permitted to substitute its own factual findings for those of the Board. To the extent that Horizon argues that "use" is synonymous with "presence in one's system," Horizon's argument is also unavailing. The FAA's language clearly distinguishes between various predicate factual findings that trigger differing regulatory violations, including "use," presence "in one's system" and "positive drug test." *Compare* 14 C.F.R. § 120.111(e)(2) *with* 14 C.F.R. § 120.33 (barring individual from performing a safety-sensitive function with the presence of a controlled substance "in one's system") *and* 14 C.F.R. § 120.111(e)(1) (permanently precluding employee who has "verified positive drug test results on two drug tests"). In fact, the IDAP itself incorporates the language of 14 C.F.R. § 120.111(e)(1), prefaced with the explanation that it pertains to "[o]n duty use of a prohibited drug" as distinguished from a "verified positive test," and the Board did not find this provision to be potentially triggered by Milam's conduct. *See* IDAP at p. 16; Award.

The Court does agree with Horizon that the reinstatement of a pilot who has so egregiously compromised public safety offends common sense considerations of the public interest. As the Board itself articulated, Milam's actions "violated a trust that exists between Horizon and its customers, who depend upon Horizon pilots to ensure their safety as they are transported from place to place." Award at p. 9. Nonetheless, where a policy barring Milam's reinstatement is not explicit in positive law or case law binding on this Court, the Court may not substitute its own general views of public welfare or infer a public policy that goes beyond the complex regulatory schemes governing the matter.

Furthermore, the Award itself is conditioned on certification by the FAA, the agency charged with enforcing the regulations in question, that Milam is fit and qualified to fly. Should the FAA find that Milam is incapable of regaining the public's trust and hence his medical certification,[1] or that the FAA's regulations otherwise prevent him from engaging in

---

[1] The Court takes judicial notice that Milam's medical certificate has been revoked by the FAA, as the revocation is publicly available information from the FAA Airman Details Report website, https://amsrvs.registry.faa.gov/airmen inquiry, and pursuant to a request by Horizon for public document submitted to the FAA Aviation Data Systems

safety-sensitive functions, the Award provides that Milam shall never again enter the cockpit. The responsibility for recertifying Milam as fit for duty ultimately and properly rests in the hands of the controlling regulatory agency, to which, as a matter of institutional competency, the Court gives deference. *See Northwest Airline, Inc. v. Air Line Pilots Ass'n Intern.*, 808 F.2d 76, 83 (D.C.Cir. 1987) ("Obviously, it would be patently absurd for us, under the guise of 'public policy,' to reverse an arbitration award that is expressly limited by deference to the ultimate judgment of the agency that is charged with the enforcement of the public policy here at issue. … It would be the height of judicial chutzpah for us to second-guess the present judgment of the FAA recertifying [the pilot] for flight duty.").

### 2) Scope of the Board's Jurisdiction

Horizon further argues that the Board exceeded its jurisdiction by disregarding requirements of the CBA and its incorporated policies and thereby dispensing its own brand of industrial justice. The jurisdiction of the Board, and its limits, arise out of the CBA. *See Continental Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 555 F.3d 399, 405 (5th Cir. 2009). The RLA judicial review provisions permit the district court to review an adjustment board's decision to determine whether the board failed to conform or confine itself to matters within its jurisdiction. *Sheehan*, 439 U.S. at 93; 45 U.S.C. § 153, First (q). An adjustment board "exceeds its jurisdiction if it issues a decision without foundation in reason or fact." *English v. Burlington Northern R. Co.*, 18 F.3d 741, 746 (9th Cir. 1994)(citing *International Ass'n of Machinists*, 626 F.2d at 717). "The basis of the Board's award must be 'rationally inferable…from the letter or purpose of the collective bargaining agreement." *Id.* It also must not be contrary to an unambiguous provision of the governing CBA. *Continental Airlines*, 555 F.3d at 405.

The Court's authority to review the Board's award under this exception is narrow, as the "interpretation of the collective bargaining agreement is for the Board to decide and not the courts." *English*, 18 F.3d at 746, citing *Gunther v. San Diego & Ariz. E. Ry. Co.*, 382 U.S.

---

Branch. Dkt. # 17, p. 16 n. 1. *See Reyes v. Fircrest School*, 2012 WL 5878243 at *1 n. 1 (taking judicial notice of information available on a government website); *U.S. v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003) (explaining that courts may take judicial notice of documents that are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned") (internal citations omitted).

257, 261-62 (1965). The Court may not reject an award because it believes that the adjustment board misread the CBA. *See Misco*, 484 U.S. at 38; *Continental Airlines*, 555 F.3d at 405. Rather, it must uphold an award even if it disagrees with the merits of the Board's decision so long as the decision "draw[s] its essence from the agreement" and does not "simply reflect the arbitrators' own notions of industrial justice." *Misco*, 484 U.S. at 38. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that the court is convinced he committed serious error does not suffice to overturn his decision." *Id.*; *see also*, *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). That the arbitrator possesses extraordinary discretion to "bring his informed judgment to bear in order to reach a fair solution of a problem" is "especially true when it comes to formulating remedies." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

Horizon advances two principal grounds on which it believes that the Board exceeded the scope of its jurisdiction. First, Horizon argues that the Board departed from construing the terms of the CBA by ignoring Horizon's Personnel Policy, entitled "Illegal Drug Use and Alcohol Misuse" ("Policy No. 35"), which Horizon contends required Milam's discharge. *See* Dkt. # 17, pp. 23-24. Second, Horizon contends that the Board ignored the IDAP itself, principally by inserting the requirement that Horizon perform an "exhaustive review" of all company records prior to terminating Milam. *See id.* at pp. 24-26. In accordance with the exceedingly narrow scope of its review, the Court defers to the Board with respect to its construction of the CBA and its factual findings but finds that remand for further proceedings is necessary.[2]

   a)  **Policy No. 35**

Horizon contends that Policy No. 35 requires Milam's termination, and that the Board exceeded its jurisdiction by failing to consider the consequences of Policy No. 35 in rendering its decision. Policy No. 35 states, "Except in cases where rehabilitation assistance is offered to benefit the Company as described below, any employee who is detected by the Company: (1)

---

[2] As the Court finds it appropriate and necessary to remand for further factual investigation, it does not reach Horizon's further argument that the Board dispensed its own brand of industrial justice by considering the personal circumstances of Milam's drug use as a mitigating factor.

to be an illegal drug user; or (2) to have misused alcohol, will be discharged." Further, "[a]n employee found to have misused alcohol or used illegal drugs by means of testing under this policy will not be offered [rehabilitation] assistance…unless the Company believes that (1) retention of an employee will benefit the Company, and (2) rehabilitation is likely to be successful for the long term." Dkt. # 18, Ex. 5, p. 2.

The Court does not agree that the Board strayed from interpretation of the CBA in considering the IDAP as the document governing the consequences for Milam of his positive drug test. Both parties agree that the Board admitted Policy No. 35, as well as the IDAP, into evidence during arbitration. *See* Dkt. # 17, p. 23; Dkt. # 23, p. 17. After reviewing the evidence and hearing oral argument, the Board determined, as it made clear in its order, that the "IDAP is the relevant document controlling Milam's fate." Award at p. 11. According to the Board, "[t]he parties do not dispute" this determination. The Board further explained that "Horizon complies with the FAA/DOT drug-testing requirements through its Integrated Drug and Alcohol Program." *Id.* at p. 4. As the Court is bound to accept the Board's construction of the CBA, it is not for the Court to question the Board's decision as to the controlling policy.

The Court also disagrees that Policy No. 35 requires a different result than that reached by the Board. Though again it is not for the Court to review the Board's determinations of fact and interpretations of contract, the Court nonetheless notes that the sole relevant difference between Policy No. 35 and the IDAP is the addition of the specific requirement in the IDAP that the infringing employee "will be offered a last chance agreement if consistent with SAP recommendations <u>and</u> a review of company records supports retention." IDAP at pp. 14-15. Horizon does not refute that the IDAP is a governing component of the CBA. Rather, Horizon would have the Board ignore the specific requirements of the IDAP and instead enforce the more general terms of Policy No. 35. As Horizon itself points out, the Board's award would have required vacatur had the Court done so. *See* Dkt. # 17, p. 23 ("It is well settled that ignoring the terms of the CBA or imposing new ones that, as here, contradict bargained-for terms of the CBA requires vacatur.").

**b) Integrated Drug and Alcohol Policy**

Horizon provides several arguments in support of its claim that the Board exceeded its

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 13

jurisdiction by ignoring unambiguous language of the IDAP. As discussed *supra* and detailed below, the IDAP's LCA provision requires that two prongs must be satisfied before an employee who tests positive for drugs can be offered a last chance agreement: (1) an LCA must be "consistent with SAP recommendations" and (2) "a review of company records" must "support[] retention of the employee as being in the best interest of Horizon Air." IDAP at pp. 14-15.  First, Horizon contends that the SAP, Mr. Perlman, did not recommended Milam's reinstatement, and that a last chance agreement should therefore have been unavailable. *See* Dkt. # 17, p. 25. This argument is easily dispensed with. The Board clearly construed the relevant language of the IDAP, and found that "Horizon does not accurately set forth its own test" in taking the position that the "SAP must recommend retention with a last chance agreement." Award at p. 11. The Board interpreted the IDAP to mean instead that "the offering of a last chance [agreement] must only be *consistent* with the SAP recommendations," and proceeded to make the factual determination that such offering was consistent with Mr. Perlman's recommendations for Milam. *Id.* (emphasis added). As the Court is not authorized to review either the Board's interpretation of this CBA provision or the Board's factual findings as to Mr. Perlman's recommendations, the Court is therefore bound to let stand the Board's determination on this first prong.

Horizon further contends that the Board exceeded its jurisdiction by writing a new term into the second prong of the IDAP's LCA provision in requiring Horizon to review "all relevant records" before it could terminate Milam. *See* Dkt. # 25, p. 30. The Board's decision turned on its finding that Horizon had failed to comply with the LCA provision because it had selectively reviewed company records related to Milam's performance. As an initial matter, Horizon argues that the Board should never have reached this question because it was required to uphold Milam's discharge upon finding that "[Milam's] positive drug test alone is a violation of the IDAP and constitutes a basis for termination." *See* Dkt. # 17, p. 26, quoting Award at p. 9. To this extent, the Court disagrees. The Board, in interpreting the IDAP and its imperative language, determined that the IDAP "mandates that before terminating an employee for a positive drug test, company records are to be reviewed." *See* IDAP at pp. 15-16 (providing that an employee who fails a random drug test "*will be offered* a last chance agreement if" the two prongs are satisfied) (emphasis added). This case is thus distinguishable

from those in which an arbitrator finds just cause for discharge and then proceeds to improperly craft a modified penalty. For instance, in *Northern States Power*, the Eighth Circuit overturned an arbitrator's award reinstating an employee because the arbitrator had implicitly determined that just cause existed to discharge the employee. *Northern States Power Co., Minnesota v. International Broth. Of Elec. Workers, Local* 160, 711 F.3d 900, 903 (8th Cir. 2013) (determining that "the language of the arbitrator's decision – specifically that NSP had 'demonstrated justification' for its decision to terminate Snow – is sufficient to show that the arbitrator found the termination was supported by 'just cause[,]" pursuant to which "the arbitrator had no authority to…fashion a remedy different than the termination."). By contrast, the Board here found that just cause for termination was predicated on Milam's ineligibility for an LCA. The Court therefore disagrees that the Board found that just cause existed for Milam's termination based on his positive drug test alone, and the Board was therefore operating within its jurisdiction in determining whether the IDAP provision at issue had been complied with.

      Horizon further contends that the Board exceeded its jurisdiction by adding the word "all" to the IDAP and thereby altering the bargained-for agreement between the parties. The Court disagrees. In examining the IDAP's mandates, the Board determined that "[w]hile the language of the IDAP does not state 'all records,' common sense dictates that certainly all relevant records must be reviewed in order to make a reasonable and good faith determination with respect to the employee's career." Award at p. 11. The Board acted within its discretion in construing the undefined term "records" to encompass "all relevant records" pertaining to the employee's performance. Where "the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599.

      The Court is similarly barred from reviewing the Board's factual determination that Horizon had failed to comply with this IDAP requirement. Having construed the IDAP language in such a way, the Board found that Mr. Smith had effectively "cherry pick[ed]" two POSSUM records containing notes of Milam's absences and ignored relevant training records and personnel files, a review of which could have led to a different result. Here, the Court is guided by the Supreme Court's admonition that an arbitrators' "improvident, even silly,

factfinding does not provide a basis for a reviewing court to refuse to enforce an award." *Misco*, 484 U.S. at 39 (internal quotation omitted). The Court agrees with Horizon that several records of Milam's exceedingly poor attendance may have constituted all of the records that were necessary for Horizon to make an informed decision regarding his reinstatement. Nonetheless, the Court does not sit in the position of a fact-finder in this case and cannot review the Board's decision that additional company records were relevant to Horizon's determination.

In one respect alone does the Court find that the Board exceeded its jurisdiction, and that is in prematurely ordering Milam to be reinstated with an LCA contrary to the express terms of the IDAP. While an arbitrator enjoys broad discretion in fashioning remedies, this discretion is not unbounded: "the arbitrator is not free to fashion a separate remedy apart from the one provided by the parties' agreement." *Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445*, 314 F.3d 29, 34 (1st Cir. 2002); *see also Enterprise Wheel*, 363 U.S. at 597 ("[T]he paramount point to be remembered in labor arbitration is that the power and authority of an arbitrator is totally derived from the collective bargaining agreement… ."). By the Board's own interpretation, the IDAP conditions the offering of an LCA to an employee who fails a random drug test on the satisfaction of two conditions, including that a review of relevant company records support retention as being in Horizon's best interest. "An employee will not be offered reemployment unless *both* conditions are met." Award at p. 11 (emphasis in original). Having found that Horizon had failed to properly review Milam's records and that no determination had therefore been made on this second prong, the Board exceeded its jurisdiction in proceeding to order Milam's reinstatement with an LCA. According to the Board's interpretation of the IDAP, Milam could be neither terminated for just cause nor reinstated with an LCA absent such a determination. In other words, only a good faith review of all of Milam's relevant employment records could free him from this limbo. The Board elided its duty to ensure that such a review was carried out: "The Board makes no determination as to whether had the Company reviewed the entire file, it would have arrived at exactly the same conclusion." Award at p. 13. Reinstating Milam with an LCA without a review of his relevant company records was therefore contrary to an express provision of the CBA and cannot stand.

*Continental Airlines*, 555 F.3d at 405.

Where the reviewing court determines that a board of adjustment has exceeded its authority, the court is empowered to vacate or modify the board's ruling, or to remand to the board for further proceedings. 45 U.S.C. § 153, First (q); *Continental Airlines, Inc.*, 555 F.3d at 407. "Even in the very rare instances when an arbitrator's procedural aberrations rise to the level of affirmative misconduct, as a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result." *Misco*, 484 U.S. at 40 n. 10. To do so "would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective bargaining agreement." *Id.* Accordingly, the Court finds that the proper course is to remand the case to the Board so that it may conduct whatever factual investigation is necessary to fulfill the terms of the CBA, including the IDAP's LCA provision, and to determine an appropriate remedy in light of Milam's conduct and Horizon's procedural improprieties. *See Union Pacific R. Co.*, 3 F.3d at 264. It is for the Board to determine whether remand to Horizon for a procedurally correct review of Milam's relevant employment records is appropriate or whether the necessary factual determination can be made by the Board itself.[3]

## Conclusion

For the reasons stated herein, the Court FINDS and ORDERS as follows:

1) The Union's Motion to Strike (Dkt. # 25, p. 3) any and all facts in Horizon's pleadings inconsistent with the findings of the Board is DENIED.

2) Horizon's Motion to Strike (Dkt. # 28) is GRANTED, and the Court shall strike arguments presented by the Union for the first time through its Reply brief (Dkt. # 25, pp. 11-13).

3) The Union's Motion for Summary Judgment (Dkt. # 16) and Horizon's Motion for Summary Judgment (Dkt. # 17) are DENIED in part and GRANTED in part. The Court DENIES Horizon's request to vacate the Board's Award on the grounds that it violates public policy. The Court GRANTS in part Horizon's request to vacate the

---

[3] As the Court remands the case for further proceedings, it defers ruling on the Union's request for attorneys' fees associated with enforcing the Board's award.

Board's Award on the grounds that the Board exceeded the scope of its jurisdiction. The Court finds that the Board exceeded its authority only to the extent that it ordered Milam to be reinstated with a last chance agreement prior to making a factual determination as to whether its offering is supported by a review of Milam's company records.

4) The Court accordingly VACATES the Board's determination that First Officer Brian Milam was not terminated for cause and the portion of the Board's Award reinstating Milam with a last chance agreement. The Court REMANDS the case to Horizon Air Pilot's System Board of Adjustment for further proceedings in accordance with this Order, including such factual investigations as it deems necessary and proper in order to comply with the parties' agreement.

Dated this 25th day of June 2014.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　RICARDO S. MARTINEZ
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE